IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS C.,[1] | ) |
| Plaintiff, | ) ) ) |
| | ) No. 21 C 244 |
| v. | ) ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER[3]

Before the Court is Plaintiff Nicholas C.'s motion for summary judgment seeking remand of the Administrative Law Judge's ("ALJ") opinion denying his application for Supplemental Security Income ("SSI") benefits (D.E. 17; R. 13, 31, 193) and the Commissioner's cross motion for summary judgment to affirm that decision. (D.E. 23.)

### I. PROCEDURAL HISTORY

Plaintiff filed his claim for benefits on May 31, 2018, alleging he has been disabled since August 1, 2017, after being struck by a car while laying intoxicated in the middle of the street, causing multiple fractures that required surgical repair. (R. 13, 289.) On May 13, 2020, Plaintiff and a vocational expert ("VE") testified at a hearing before the ALJ, and on June 24, 2020, ALJ

---

[1] The Court in this opinion is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Kilolo Kijakazi for former Commissioner Andrew Saul as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On January 29, 2021, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 7.)

Carla Suffi found Plaintiff not disabled. (R. 13-23.) Plaintiff's appeal of that decision is now before the Court.[4] This appeal followed.

## II. ADMINISTRATIVE RECORD

### A. Hearing

On May 13, 2020, Plaintiff, who was represented by counsel, testified at a hearing before an ALJ. (R. 28-56.) A vocational expert ("VE") also testified at the hearing.

At the time of the hearing, Plaintiff testified that he was 36 years old and a high school graduate who had attended special education classes. (R. 34-35, 37.) After Plaintiff was hit by a car, hospitalized, and underwent surgery, he testified that he was discharged to Parkshore Estates Nursing and Rehabilitation Center ("Parkshore") and has lived there ever since. (R. 39-40.) When questioned by the ALJ if he was "still residing at Parkshore? Are you homeless otherwise?" (R. 35.) Plaintiff responded, "[y]es, homeless otherwise and I was hit by a car August of 2017." (*Id.*) He also testified that if he were no longer able to stay at the nursing home, he would have nowhere to go including no family he could stay with. (R. 46-47.)

Prior to the COVID-19 pandemic, Plaintiff stated he was allowed to leave Parkshore on a pass, between the hours of 7 a.m. and 7 p.m. (R. 35-36.) He testified that he walks with a cane because he cannot walk far and takes pain pills when his legs and hips start to hurt as well. (R. 36, 40.) Plaintiff further testified that he could sit for about 30 minutes before he has to move around, exercise his hip and take a pain pill. (R. 41.) Plaintiff explained that he has "c[o]me a long way" since his surgery, graduating from a wheelchair to a walker to a cane. (R. 42.) Plaintiff additionally testified that he is not on any medications for mental health, but rather only takes Melatonin to help him sleep. (R. 43.) In further testimony, Plaintiff stated he is capable of doing

---

[4] The Appeals Council ("AC") subsequently denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

his activities of daily living independently, but the nursing home staff helps him with his paperwork and mail. (R. 48.)

### B. ALJ Opinion

The ALJ applied the five-step inquiry required by the Social Security Act in reaching the decision to deny Plaintiff's request for benefits. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of May 31, 2018. (R. 15.) At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: left tibial plateau fracture status post open reduction internal fixation ("ORIF"), history of pulmonary embolism, mixed affective disorder secondary to his general medication condition, neurodevelopmental disorder, and substance use disorder in reported remission. (R. 15-16.) The ALJ determined that Plaintiff's mandibular fracture and HIV are non-severe impairments because they do not cause more than minimal limitations, the fracture healed, and the HIV is managed medically. (R. 16.)

At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (R. 16.) Specifically, the ALJ determined that the left tibial plateau fracture status post ORIF did not meet listings 1.02 or 1.03 for various reasons including no gross anatomical deformity; after surgical repair he continued to progress well with therapy; his pain was controlled with only over-the-counter medications; he used a cane only at certain times in December 2018 and in 2020; and in March of 2020 Plaintiff presented with no neurological deficits or lower extremity issues. (R. 16-17). The ALJ found no evidence that Plaintiff's pulmonary embolism caused any respiratory obstruction or restriction. (R. 17.) Similarly, the ALJ assessed the so-called "paragraph B criteria" and concluded Plaintiff's mental impairments caused mild limitation in understanding,

remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 17-18.) The ALJ also determined that the so called "Paragraph C criteria" were not satisfied. (R. 18.)

Before turning to Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 416.967(a) with the following additional limitations:

> Occasionally balance, stoop, kneel, crawl and climb ramps/stairs. The [Plaintiff] can never crouch or climb ladders, ropes, or scaffolds and never perform work tasks involving exposure to extraordinary hazards such as unprotected heights, open blades and unguarded, moving mechanical parts that can engage the body. The [Plaintiff] may require a cane for ambulation; never work tasks in environments with exposure to concentrated pulmonary irritants, such as dust fumes odors and gases. The [Plaintiff] can understand, remember, and sustain the attention and concentration to carry out and to adapt to the demands of only simple, routine tasks and simple work-related decision-making, and requires tasks that … can be learned by visual demonstration or oral instruction.

(R. 18.) At Step Four, the ALJ noted that Plaintiff was unable to perform his past relevant work as a laborer. (R. 21.) At Step Five, the ALJ concluded that a significant number of jobs existed in the national economy that Plaintiff could perform given his age, education, work experience and RFC, including the representative positions of circuit board assembler (34,000 jobs in the nation), call out operator (41,000 jobs in the nation), and address clerk (12,000 jobs in the nation). (R. 21-22.) As such, the ALJ found that Plaintiff had not been under a disability since May 31, 2018, the date of Plaintiff's application. (R. 22.)

### III. LEGAL STANDARD

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination. Rather, this Court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). The claimant has the burden of proof at steps one through four of the five-step sequential process for determining disability. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden of proof shifts to the Commissioner of Social Security to show that the claimant can adjust to other work existing in "a significant number of jobs…in the national economy." *See Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

The ALJ also has a basic obligation to develop a full and fair record, and to build an "accurate and logical bridge" between the evidence and the ALJ's conclusion. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773-74 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must also explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)).

**IV.    ANALYSIS**

Plaintiff argues for remand on the ground that the ALJ failed to reconcile significant evidence of the supports and treatment provided in Plaintiff's nursing home setting. Plaintiff's

Memorandum of Law in Support of Reversing or Remanding the Decision of Social Security ("Pl. Mem."; D.E. 18) at 7. In other words, Plaintiff maintains that the Parkshore records support his need for extensive support in his activities of daily living and that he was not ready to be discharged from the nursing home because he needed "extensive care secondary to physical difficulties." Pl. Mem. at 8 quoting R. 1504. He further argues that the ALJ's conclusion that Plaintiff "is in a nursing home, but he is there due to his homeless status and not because he continued to require rehabilitation or intensive care" is factually wrong. *Id.* quoting R. 18. On the other hand, the Commissioner argues that the Parkshore notes are not detailed but rather "long, difficult to decipher, and as consisting mostly of checkbox forms containing very little narrative that might clarify [P]laintiff's abilities." Defendant's Memorandum in Support of Motion for Summary Judgment ("Def. Mem."; D.E. 24) at 1 citing R. 408-2168. In addition, the Commissioner points to the ALJ's citation to evidence that painted a fuller picture of Plaintiff's abilities, his significant improvement, and Plaintiff's own testimony that given the chance to correct the record, neither he nor his counsel did so. *Id.* at 2.

Although the Court largely agrees with the Commissioner that the Parkshore notes are not ideal and that Plaintiff's records show significant improvement over the course of time from the initial accident and surgery, the Court does take issue with the ALJ's failure to reconcile the consultative examination by Harris Aleem, M.D. (R. 381-85) and Parkshore's records rating Plaintiff's activities of daily living (R. 924-25) on the *very same day* – December 14, 2018, which substantially conflict with each other regarding Plaintiff's abilities. The Court is further troubled by the ALJ's and the Commissioner's lack of discussion surrounding this conflict.

It is true that an ALJ's decision must be "sufficiently detailed that [the court is] able to trace its path of reasoning," *Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005), and that "an ALJ

6

is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). Yet here, the December 14, 2018, contemporaneous records are more than an inconsistent snippet of information. Quite simply, the ALJ's lack of discussion of any of the Parkshore progress notes from September 17, 2018 to March 18, 2020 (R. 848-1285) is alarming but the complete disregard for a progress note (R. 924-25) dated the same date as the consultative examination (R. 381-85) with conflicting information regarding activities of daily living requires remand in this instance. The conflicting medical evidence is a significant issue that the ALJ had a duty to resolve and the failure to do so leaves a gap in the path of reasoning thus requiring remand. *See, e.g.*, *Richardson v. Perales,* 402 U.S. 389, 399 (1971) (stating when there is conflicting medical evidence, "the trier of fact has the duty to resolve that conflict"); *Vrooman v. Kijakazi*, No. 20-2939, 2021 WL 3086196, at *2 (7th Cir. July 21, 2021) (unpublished) (quoting *Richardson* and finding that when the ALJ is presented with conflicting medical opinions, the ALJ has "the duty to resolve that conflict"). Furthermore, although the Commissioner's brief raised many arguments relying on other portions of the Record, like the ALJ, the Commissioner also failed to discuss the Parkshore progress notes (R. 924-25) dated December 14, 2018, despite Plaintiff addressing the conflict in his brief. Pl. Mem. at 9-10; Def. Mem. at 2-5.

On December 14, 2018, Plaintiff underwent an internal medicine consultative examination with Dr. Aleem. (R. 381-85.) Dr. Aleem described Plaintiff's car accident and subsequent surgery and summarized Plaintiff's report of pain in his left leg, but not every day, that it hurt to walk but he could walk about three or four blocks, that he usually used a cane when he walked long distances, and that he took pain medications to relieve the pain but did not need them on a daily basis. (R. 383.) Dr. Aleem described that Plaintiff could perform all other activities of daily living;

7

he was able to pick up coins, turn doorknobs, button a shirt, and tie shoelaces. (*Id.*) He also described that Plaintiff used a cane but was able to walk short distances without it. (*Id.*) Upon examination, Plaintiff's range of motion of his hips, knees and ankles was full, free and painless; he was able to walk heel-to-toe and could heel-toe stand; he could perform knee squats; and he was able to walk with a steady gait without an assistive device. (R. 384.) Plaintiff's strength was five out of five in both lower extremities. (*Id.*) Dr. Aleem determined that Plaintiff was able to sit, stand, walk, lift, carry and handle objects without limitation, although he would require a cane for prolonged effort. (R. 385.)

This consultative examination is juxtaposed against the Parkshore records of the very same date – December 14, 2018 – that paint a different picture of Plaintiff. The Parkshore records contain functional status reports including coding activities of daily living to rate the resident's performance and support provided over nursing staff shifts. On December 14, 2018, Plaintiff needed extensive assistance[5] in bed mobility, transfers, and toileting and limited assistance[6] for walking, locomotion, dressing, and personal hygiene. (R. 924.) Plaintiff was also "not steady" (only able to stabilize with staff assistance) moving from a seated to a standing position, moving on and off the toilet, and surface-to-surface transfer (transfer between bed and chair). (R. 925.) These mobility, transfers, toileting and stabilization issues continued into 2019. (See R. 976-77.)

Plaintiff argues, "how could [he] perform a range of sedentary work if he needed help with even using the toilet and needed to be stabilized by an aide when he stood up?" Pl. Mem. at 10. The Court does not have the answer to that question, nor are we required to. But, the ALJ should

---

[5] Extensive assistance is defined as "resident involved in activity, staff provide weight-bearing support." (R. 924.)

[6] Limited assistance is defined as "resident highly involved in activity; staff provide guided maneuvering of limbs or other non-weight bearing assistance." (R. 924.)

have addressed it, for an ALJ "may not ignore entire swaths of [evidence] that point toward a finding of disability" even as the ALJ need not address every piece of evidence. *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021). Yet the ALJ's not having addressed large portions of the Parkshore records (and specifically, the December 2018 functional status reports) amounted to not discussing too significant a swath of evidence pointing toward Plaintiff's disability here. The Court is unable to determine if the nursing home records were "ignored, overlooked, or simply not believed." *Dwayne E. v. Saul*, No. 20 C 4103, 2021 WL 4745300, at *6 (N.D. Ill. Oct. 12, 2021). The ALJ's not having offered sufficient reasoning to grapple at least minimally with this conflicting evidence is a lack of minimal articulation that warrants remand. Accordingly, the ALJ's opinion failed to create a logical bridge between the evidence and her conclusions, and the opinion was not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment seeking remand (D.E. 17), denies the Commissioner's cross motion for summary judgment to affirm the ALJ opinion (D.E. 23), and remands the case for further proceedings consistent with this opinion.

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: September 21, 2023**